UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BAY CORRUGATED CONTAINER, INC.,

       Plaintiff,                                Civil Action No.
                                                 91-CV-70170

vs.

                                                 HON. BERNARD A. FRIEDMAN

GOULD, INC.,

       Defendant.
_____/

## OPINION AND ORDER OF DISMISSAL

        This matter is presently before the court on plaintiff's "Notice Requesting Resolution of Petition to Enforce Consent Judgment" [docket entry 118]. After receiving this surprising "notice," which requested that the court take action in a case that had lain dormant for the previous nine years and that the court had assumed was long since dead and buried, the court issued an order requiring the parties to submit status reports explaining, essentially, what they had been up to for the past decade. The court also held a hearing in an effort to understand this exceptionally long period of inactivity. The parties' story, in a nutshell, is that after the court referred them to mediation in early 2000, plaintiff settled the case in late 2000 with the successor-in-interest of defendant's successor-in-interest (Exide Technologies, Inc.) which, in 2002, filed for bankruptcy. As far as the court can tell, plaintiff's counsel has been sitting on his hands since that time. When it finally dawned on him that Exide most likely will never be in a position to pay for the remediation plaintiff seeks, he thought it might be worthwhile trying to resurrect the case against the original defendant. For the reasons explained below, the court rejects this course of action and shall deny plaintiff's 2009 "notice" and dismiss its moribund 1999 petition.

This environmental contamination case has a long history. Plaintiff Bay Corrugated Container, Inc. ("Bay") purchased a manufacturing plant located in Monroe, Michigan ("the Monroe Facility") from defendant Gould, Inc. ("Gould") in 1973. Gould had used this facility from 1952 to 1973 to manufacture batteries. Since 1973, Bay has used it to manufacture corrugated cardboard. In 1984, Gould sold its battery business to GNB Batteries, Inc. ("GNB").

In 1991 Bay brought the instant action against Gould, alleging that Gould was responsible for environmental contamination at the Monroe Facility stemming from Gould's battery manufacturing operations. Although GNB had purchased Gould's battery division in 1984, GNB denied liability for contamination and Gould defended the litigation. The litigation resulted in a 1994 Settlement Agreement and Mutual Release ("1994 Settlement Agreement") in which Gould and Gould Electronics, Inc., agreed to pay for investigation and remediation of the contaminated site. The court incorporated the terms of this settlement agreement into a consent judgment that was entered on August 2, 1994 [docket entry 91].

In November 1999, Bay filed a petition to enforce the consent judgment. Gould responded by filing a motion to dismiss. The court held a status conference in January 2000 and a hearing in February 2000. Instead of deciding either the petition or the motion to dismiss, the court appointed a mediator, Dean A. James Barnes, to assist in resolving the dispute.[1] The court heard nothing whatsoever from either party for the next nine years. Now, out of the blue, plaintiff is again

---

[1] Contrary to the baseless assertion made by Bay's counsel at oral argument, Dean Barnes is not the court's "personal friend," but rather a respected expert in this field of the law whom the court knew by reputation and from his involvement in one other CERCLA matter. Dean Barnes is a professor of public and environmental affairs at Indiana University School of Law and the former deputy administrator and general counsel of the U.S. Environmental Protection Agency.

requesting that this court resolve its 1999 petition to enforce the 1994 consent judgment against defendant.

Unfortunately for Bay, there has been far too much water under the bridge since it settled its claims against Gould and the relief it requests is no longer available. From 1990 to 1995 Gould was involved in litigation with GNB regarding the liabilities assumed by GNB when it purchased Gould's battery division. In September 1995, that litigation came to a final conclusion when the Court of Appeals for the Seventh Circuit held that GNB assumed all of Gould's environmental liabilities when GNB purchased Gould's battery division. *See GNB Battery Techs., Inc. v. Gould, Inc.*, 65 F.3d 615 (7th Cir. 1995).[2]

Documents attached to Gould's status report show that in 1996 and 1998, following the Seventh Circuit's unambiguous decision, Bay expressly acknowledged the transfer of liability under the 1994 Settlement Agreement from Gould to GNB by negotiating several modifications to

---

[2] In *GNB Battery Techs.*, GNB sought a declaration that it was not liable for environmental contamination caused by Gould prior to GNB's purchase of Gould's battery division. Gould counterclaimed for the opposite declaration. The Seventh Circuit affirmed the district court's decision that the parties' "Assumption Agreement unambiguously transferred the disputed environmental liabilities to GNB" and that GNB had assumed "*all of Gould's liability arising out of its earlier dumping and storage of toxic waste*." *Id.* at 619 (emphasis added). The Seventh Circuit noted that the parties' Assumption Agreement "contemplated the transfer of all of Gould's liabilities whether they were known or not, and whether they had been identified and responded to or not." *Id.* at 623. The district court's specific findings and conclusion, which the Seventh Circuit affirmed, were as follows:

> The Court finds that under the restated assumption agreement GNB, Inc. assumed the liability for toxic waste generated by Gould from its battery business and stored at third-party dump or storage sites or at Gould closed plants prior to the divestiture and sale. Judgment is returned for Defendant Gould, Inc. and against Plaintiffs GNB, Inc. and GNB Industrial Battery Company.

*GNB, Inc. v. Gould, Inc.*, 1994 WL 110210, at *8 (N.D. Ill. March 25, 1994).

that agreement *with GNB*.  For example, in a letter dated August 29, 1996, to GNB's counsel, counsel for Bay agreed to amend the 1994 Settlement Agreement to extend the deadline *for GNB* to complete certain site work at the Monroe Facility.  In a document entitled Investigation and Remediation Agreement Between GNB Technologies, Inc. ("GNB") and Bay Corrugated Container Corp. ("Bay"), dated July 7, 1998, a copy of which is attached to Gould's status report, GNB and Bay expressly acknowledged that "GNB has assumed Gould's responsibilities under the [1994] Settlement Agreement."

Bay's November 1999 petition "to enforce consent decree" sought to compel Gould to perform environmental site work at the Monroe Facility, despite the fact that Bay had already acknowledged, repeatedly in writing, that Gould's liability under the 1994 settlement agreement and consent decree was transferred to GNB upon GNB's purchase of Gould's battery division in 1984. Even in its 1999 petition, in footnote 1, Bay acknowledged that "GNB Technologies, Inc. is the successor in interest to Gould, Inc."  It is not clear why Bay, in light of the Seventh Circuit's decision, looked to Gould in 1999 or why Bay is continuing to do so now.

In any event, on January 12, 2000, and February 16, 2000, this court held hearings regarding Bay's 1999 petition and Gould's motion to dismiss. At oral argument, Bay recognized GNB as Gould's successor in interest.  Nonetheless, Bay contended that Gould was responsible for additional investigation and remediation of the Monroe Facility.  As noted above, the court referred the matter to Dean Barnes for mediation.  During the mediation, Exide Technologies, Inc. ("Exide") purchased GNB and assumed GNB's environmental liabilities.  On October 31, 2000, Bay and Exide entered into an Outline of Settlement Agreement ("2000 Settlement Agreement"), a copy of which is attached as Exhibit D to Bay's status report.  In this agreement, Exide and Bay expressly indicated

4

that the remaining environmental responsibilities at the Monroe Facility belong to Exide and that Bay held it exclusively responsible for any remaining investigation and remediation. The 2000 Settlement Agreement states: "Exide will have responsibility for contamination arising from contaminants identified to date." Bay's Status Report, Ex. D, p. 5. This document also states: "This agreement is binding among the parties and will be further evidenced and implemented pursuant to an Amended and Restated Consent Judgment and Settlement Agreement which the parties shall enter into as soon as possible. However, in the absence of such Amended and Restated Consent Judgment and Settlement Agreement, this outline shall be binding upon the parties." *Id.* at 6. This agreement was signed by Bay and Exide, although not reduced to a consent judgment. Interestingly, this agreement contains no enforcement provision other than ¶ 6, entitled "Mediation," which provides that "[i]f a dispute arises between the parties relating to this Agreement, Dean A. James Barnes will act as facilitator," suggesting that Bay waived any other remedies it might have had.

The situation took a new turn on April 15, 2002, when Exide filed a Chapter 11 petition with the United States Bankruptcy Court in Delaware (Case No. 02-11125). While attempting to reorganize in bankruptcy, Exide filed a motion to reject the 1994 and 2000 Settlement Agreements pursuant to section 365 of the Bankruptcy Code, a provision that allows a debtor to reject executory contracts with court approval. In November 2002 the bankruptcy court denied the motion to reject the 1994 Settlement Agreement. (Apparently the motion to reject the 2000 Settlement Agreement remains pending.) Liability under the 1994 settlement agreement therefore continues to attach exclusively to Exide.

In its "Notice Requesting Resolution of Petition to Enforce Consent Judgment," Bay now requests that the court convene a conference "for the purpose of establishing a Scheduling

Order for the Court to resolve Bay's Petition to Enforce the Consent Judgment dated November 30, 1999."[3] Gould opposes this notice/request on various grounds, including that it has no liability.

Given the history outlined above, it is clear to the court that Gould has no liability in this matter. As noted, the Seventh Circuit held in 1995 that GNB assumed all of Gould's environmental liabilities, including those under the 1994 Settlement Agreement and Consent Judgment, when it purchased Gould's battery division in 1984: "The district court did not err in determining that the Restated Assumption Agreement, alone, unambiguously transferred all of Gould's Battery Division liabilities to GNB." *GNB Battery Techs.*, 65 F.3d at 622. Gould's responsibilities for remediating the Monroe Facility shifted to GNB and then to Exide. Gould is not liable.

Even if Gould were conceivably liable under the 1994 settlement agreement and consent judgment, the court would dismiss Bay's 1999 petition at this point for lack of prosecution. As noted above, Bay took no action against Gould (presumably because Bay knew it had no basis for doing so in light of the Seventh Circuit's decision and the subsequent acquisition of GNB by Exide) and made no effort to revive its 1999 petition from 2000, when the court referred the matter to Dean Barnes, until March 2009, when Bay filed the instant "notice." This extremely long period of inactivity clearly brings the case within the ambit of Fed. R. Civ. P. 41(b), which permits dismissal "[i]f the plaintiff fails to prosecute," and E.D. Mich. LR 41.2, which permits dismissal if "the parties have taken no action for a reasonable time." Nine years of inactivity by Bay evinces its abandonment of this case and clearly justifies dismissal under these court rules. This result is all

---

[3] Bay's Petition to Enforce Consent Judgment is dated November 4, 1999, and was filed as a sealed matter on November , 1999 [docket entry 92]. The court is unaware of any petition in this matter that is dated November 30, 1999.

the more justified in the present case given that Bay's failure to prosecute is explained by the indisputable fact – as determined by the Seventh Circuit and as Bay itself has expressly acknowledged on several occasions – that Gould is no longer liable for any of the costs associated with the investigation or remediation of the Monroe Facility. Accordingly,

IT IS ORDERED that Bay's "Notice Requesting Resolution of Petition to Enforce Consent Judgment" [docket entry 118] is denied.

IT IS FURTHER ORDERED that Gould's motion to dismiss [docket entry 107] is granted.

IT IS FURTHER ORDERED, alternatively, that Bay's petition to enforce consent judgment [docket entry 92] is dismissed for lack of prosecution.

                                                                     s/Bernard A. Friedman_____
                                                                     BERNARD A. FRIEDMAN
                                                                     SENIOR UNITED STATES DISTRICT JUDGE

Dated: September 18, 2009
       Detroit, Michigan